We are back in business and our next case is Shepherd v. Julian. Pavletic. Thank you, Judge Easterbrook. Good morning, Your Honors, and may it please the Court. My name is L.J. Pavletic, and pursuant to Illinois Supreme Court Rule 711 and Circuit Rule 34H, I am appearing today under the direct supervision of Sarah Shrupp, an attorney with the Blum Legal Clinic and Northwestern Pritzker School of Law. Together, we represent the petitioner appellant in this case, Mr. Josh Shepherd. This appeal is about fairness, Your Honors, in sentencing and post-conviction relief. On the one hand, there is the Armed Career Criminal Act, or the ACCA, which continues to confuse courts. I hope you'll use words rather than initials. I will use the full name of the statute, Your Honor. You can just say the act. It's perfectly straightforward. Then the act. Mr. Shepherd's case typifies the act's inconsistent application. On the other hand, there is habeas corpus. It's promised the grand petitioners, like Mr. Shepherd, what the act has tried to take from him. A last resort... Now, if we ordered relief for Shepherd, he would go back to the Western District of Kentucky, right, for retention? That is the District of Conviction, yes, Your Honor. Right. And would that court not be bound by the Sixth Circuit case, that's now directly contrary to the position that he's arguing for here? In other words, how would it help him to be resentenced? Two responses to that, Your Honor. One, I think it is entirely within this court's powers under habeas corpus to afford relief in this circuit. So I think this court could order... No, if this case went back to the district court, you would then have two circuits disagreeing on a matter of federal law. The Sixth Circuit has said he loses under federal law. The Seventh Circuit would say he wins under federal law. This case goes back to a district court in the Sixth Circuit, which, if it doesn't follow the Sixth Circuit's understanding of federal law, will be reversed. And then we'll be in the soup again. Nobody wants to be back there, Your Honor. I think what I meant by that response is that if this court does grant the petition and orders the district court here to order his release, I think the district court here would be empowered by this district court's order to afford that remedy. I don't mean this to be a trick question, but if this case goes to the Supreme Court, would it apply Sixth Circuit law or Seventh Circuit? That is a tough question, Your Honor. I think the Supreme Court would apply its law first and foremost, its precedent under the act. Correct, Your Honor. And again, this proposition comes up in the Korean Airlines disaster case, which we cite in our briefs. Now Justice Ginsburg says, citing to a law review article, that federal law is presumed to be uniform. And that comes up in the kind of tricky choice of law question that we have here. She said in that case that the precedent... Yes, Your Honor? Finish your thought. I'm sorry. No, no, no problem at all. I was just quoting now Justice Ginsburg, who said that the precedent of the originating circuit merits close consideration, but does not have stare decisis effect. Well, I need help with something. I really do. Neither... I need help with a lot of things. Neither side mentioned issue preclusion. But can you explain how he could get around issue preclusion on the waiver here? The Sixth Circuit decided it was pre-waiver disenforceable, that it was voluntarily and knowingly made. This is the same issue, the same part. The issue was actually decided. It was determinative of the outcome. Is there part of issue preclusion that does not apply? It is not the same issue than it was in the Sixth Circuit, Your Honor, because Mr. Shepard raises an independent Mathis claim. In addition, the Sixth Circuit on direct appeal held that he had waived all claims besides the calculation of his guideline sentence and then went on to discuss the merits of the career offender guideline or the Armed Career Criminal Act enhancement and decided that against them. Since then, the magistrate judge on the 2255 motion did say that although there was no appeal of that issue, there was no waiver of that issue on direct appeal, there was on collateral attack. But all the magistrate judge did was credit the signature on the plea agreement and not the conflicting oral pronouncements made in the proceedings. And all the courts since then, in the entirety of this litigation, have not consistently enforced waiver, and that includes the government's representations to this court in this case. Usually, though, it's not a response to issue preclusion to say the court was wrong. The whole idea is that it's not subject to reexamination, right? Right, Your Honor. I think, though, that the same issue requirement of issue preclusion would stand even under Your Honor's question, which is now Mr. Shepherd is raising an independent Mathis claim. But there was a broad, the finding, I thought, was unqualified, that he waived collateral remedies. Maybe correctly, maybe incorrectly decided, but decided. Correct. And if this court is not persuaded by the merits of the waiver arguments or the issue preclusion arguments, I think it can still credit the government's waiver in this court. And as waiver is not a jurisdictional issue, it can still choose to look past that if it would create a miscarriage of justice in this case. Let me ask you about the miscarriage of justice. It's a phrase that appears a lot in this case and in others. Given, as I understand it, that Mr. Shepherd did, in fact, burglarize dwellings, what all of us would recognize as a dwelling, and buildings, under the ordinary sense of that word. Why are we required to apply the categorical method in deciding the miscarriage of justice issue? So the miscarriage of justice issue comes up twice, as I understand it, in this case. It's a requirement under this court's precedent in Davenport, which, as I understand it, is the procedural inquiry to see whether Mr. Shepherd can even bring an independent Mathis claim under 2241. So it comes up there, and this court has held in Light v. Carraway that a fundamental sentencing defect, such as the AAC enhancement here, qualifies. So that's one of the miscarriages of justice. No, that doesn't really answer my question, because I'm really focused on the role of the categorical method. We apply it when we have to, even though it requires courts to close their eyes to exceedingly violent acts, to very dangerous crimes, and not treat them as violent felonies at times, because state law is a little broader around the edges than the Supreme Court's interpretation of the definitions under the Act. But if there's any room for exercise of equitable judgment, which is where we seem to be here, why should we ignore what Mr. Shepherd actually did? Because for the purposes of the analysis under the Act, under the categorical approach, with an indivisible statute, what the person actually burglarized is irrelevant for the purposes of the analysis. I understand that under the categorical method. I'm just asking, why do we apply the categorical method to this equitable problem? Because, if I'm understanding Your Honor's question, the substantive issue under the equitable problem is, in fact, the sentence enhancement. So if the court's there to see whether Mr. Shepherd indeed does qualify or not, and because this statute is indivisible, then the Supreme Court has said that the modified categorical approach cannot be applied to such a statute. Let me shift gears to Malone and the Sixth Circuit's decision there. Malone, did you find any Kentucky case law applying the second-degree burglary statute that was applied to Mr. Shepherd to burglaries of vehicles or watercraft or aircraft? That is, Kentucky case law that would indicate that the Sixth Circuit had incorrectly evaluated Kentucky law. No, Your Honor. There is no Kentucky case that passes on the second-degree burglary statute and applies it to vehicles or planes, as Your Honor said. However, it is our position that the conclusion is inescapable from the Kentucky Supreme Court's precedence in the burglary chapter writ large. So it has held that in Conyers, that without regard to the qualifier, for the purposes of all the burglary statutes, building gets its meaning from the statute, from the statutory definition. That's first-degree burglary. Or, I'm sorry, that's Funk. In Conyers, the Court just said it applies to the whole chapter. In Funk, the Court said as much with regard to first-degree burglary. And then the Court reached the same result in Caldwell with regard to third-degree burglary. And this is important because neither of those provisions, the sisters to second-degree burglary, contain the as-defined herein qualifier. But the Court has held that nonetheless the statutory definition applies. Held it or just said it? The Court has held it in those cases, in the first-degree and in the third-degree cases. But again, to Your Honor's original question, to be sure, there is no clear holding on the second-degree statute. But we think this is consistent with the fact that what the Court also did in Caldwell, and again, this is the case that Malone principally relies on, was read the qualifier on which the entirety of that Court's reasoning applies out of the statute. So if you take these cases together, that means that Malone's statutory definition of building applies to no burglary or trespass offense in the statute. But that cannot be what the legislature intended, because it was concerned with casting its heightened levels of protection widely to cover all sorts of buildings and dwellings. And again, the Sixth Circuit was obliged to accept the conclusions of the Kentucky Supreme Court in this case. And this distinction is significant here for the merits analysis under the ACCA, because if building, and thus dwelling, encompasses vehicles and movable structures, where people assemble for purposes other than habitation, then the Kentucky statute is categorically overbroad and non-generic. But even in addition to that, the statute still which includes more buildings than federal generic burglary does. And that's because a burglary statute that focuses on a building's use rather than its inherent nature is overbroad. Thus, a statute must be tethered to that concept of a building's nature, or be designed or adapted. This seems a very strange place to make that argument. That failed in this circuit. And of course, that's why the Supreme Court has granted certiorari and stick to resolve that kind of issue. If Your Honor is referring to Smith v. United States, I understand the court's reasoning there, which credited the Stitt dissent to state that these burglary statutes that do extend to vehicles or movable structures that are designed or adapted for human accommodation to qualify. But even if that's the case, this statute is still overbroad, because even if it's buildings in the ordinary sense, there are buildings that can be usually occupied by a lodger that are not designed or adapted for human accommodation. I see I'm entering my rebuttal time. I will reserve the remaining time for now. Currently, counsel. Mr. Wood. Your Honor, may it please the court, Bob Wood on behalf of the government. With the court's permission, I'd like to quickly address the miscarriage of justice issue, preclusion issue. I think obviously it was a ham-fisted way for me to get at issue preclusion to argue law of the case. We have a lot of these 2241 cases that are convictions. I'm surprised for what it's worth, Mr. Wood, that nobody has talked about Christiansen against Colt Industries Operating Corporation. It deals with law of the case in multi-circuit situations. It's a decision of the Supreme Court on this very question, and you would think it would be important to deal with. I'm sorry, Your Honor. I'm not familiar with the case. In Christiansen, this circuit disagreed with the Federal Circuit about a matter that the Federal Circuit had decided, and the consequence of which was that the case was going to go ping-ponging. We were going to send it to the Federal Circuit, and the Federal Circuit was going to send it to us apparently for all of time. And the Supreme Court said, stop. Stop already. This case is another potential ping-pong, and one would think that the best way to solve it is to resort to the Supreme Court. I believe that makes a lot of sense, Your Honor. And also, it would make sense to resort to the analysis done through law of the case or issue preclusion, which mirror one another. They're given different names, and the cases do work a little bit differently. But you end up, in this case, with the question of miscarriage of justice. And I don't want to step, the Department's sensitive about the categorical approach and the ways in which it does and doesn't apply, and I don't want to overstep and state this as the Department's position, but it makes sense to me that the substantive issue under miscarriage of justice would be whether a miscarriage of justice has, in fact, occurred. And so Your Honor's question earlier leads, I think, to a natural conclusion that, given that Shepard committed the types of burglaries that are the mine run of generic burglary, this could not be a miscarriage of justice. And with that, I would add that the mine run in Kentucky, going to another point of discussion in the earlier part of this argument, is dwelling burglary that is extremely generic, the furthest that Kentucky has gone. Indeed, Shepard's argument depends on going beyond where Kentucky has gone for second degree burglary. The furthest on the vehicle side that Kentucky has gone is trailer homes. Smith indicates in this circuit, at the very least, that that is absolutely fine. Malone would say the same in the Sixth Circuit. At least if it's plugged into utilities. At least if it's plugged into utilities, although the Department's view would go further than that. But there is no indication that I've seen in anything in Kentucky law that any prosecutor could successfully charge the sorts of buildings, the wide-ranging sorts of buildings that are encompassed by the specialized building definition. That definition is why the government made its earlier mistake in this case, because it appears to reach things like airplanes designed for public transportation, if you add up the different pieces of the definition. But Kentucky has never indicated that it's willing to go there when treating something as a dwelling. And what distinguishes second degree burglary from third and first degree burglary is the necessity of there being a dwelling. And that also makes a lot of sense out of the petitioner's point that Kentucky has said in a couple of different Supreme Court cases that first and third degree burglary include the building definition found in the definition section of the burglary statutes, because they do. And that's what distinguishes. That's the work that dwelling is doing in the statute, is to elevate it above third, and then first has a bunch of different ramifications and possibilities. And also as a response to the point, oh, I'm sorry, Your Honor. You know, here I come again with why did you argue law of the case? So I argued law of the case. In the definition preclusion, you know, on the issue of the enforceability of the plea waiver, does the government believe that issue preclusions often apply here? No, that's not the case. I argued that because this Court has used the phrase law of the case in other post-conviction collateral relief contexts, and also because the way that these cases are litigated, and this is going to stray into the Department's new view of the availability of 2241, but is that most of the cases that fall under 2241, at least in my district, are conviction-related cases. And procedural defaults apply. Various things apply that would apply if it is the same case in the way that they do in direct appeals, in cross motions for summary judgment, whereas issue preclusion is a matter for separate cases. The Department hasn't taken a direct view that I'm aware of on whether these cases are simple cases that are fully separate. The conviction-related ones don't feel that way to me. But if the Department is correct, or ends up being vindicated, and it's joining the 11th and 8th Circuits' view that 2241s are specifically for this narrow band of confinement-related cases, then those would probably be entirely separate civil cases, and my failure to raise issue preclusion and instead calling it law of the case would be, at least it might be more obviously erroneous. Maybe it was wrong anyway, Your Honor. But this goes, I think, to the petitioner talks about a flux in the law of the Armed Career Criminal Act. There's also an ongoing flux, at least in the Department's view, over what kind of a case 2241 encompasses. Our court has not been unanimous on that score. That is for sure. And none of this is news to the presiding judge today, who was an early proponent of the Department's new or readopted view, depending upon how you look at all the ways in which we can flip-flop. But unless there is another piece of that that I can answer for Your Honor, I'd also like to say that this issue of whether usually occupied by a lodger is broader than adapted for occupation seems to me to be drawing a false line. And obviously, Smith makes that clear. But for purposes of this case, it bears mentioning that in the Cochran case, the Kentucky Supreme Court defined usually occupied, or used in conjunction the term usually occupied with the term adapted for occupancy. And I think that gets us close enough. And then two sentences later, you use the word capacity, which if there is a distinction between use and nature, which I don't believe there is and the Department doesn't believe there is, Kentucky certainly would not be subject to that kind of a debate, at least with respect to second degree burglary. And the usually occupied portion, this sort of use versus nature debate, goes to precisely why Congress included burglaries as violent felonies when enacting the Armed Criminal Act. And that is that home invasions are inherently dangerous. Doesn't matter what kind of a home it is. Doesn't matter if it's a mansion or a trailer home. And I think Congress would expect that that purpose would be vindicated in neighborhoods that were entirely trailers, neighborhoods that were entirely mansions. I can think of counties near where I grew up. I can think of neighborhoods next to where I grew up. I'm from trailer country, where Congress's public safety purposes in enacting the Act would not be fully vindicated if burglary does not include mobile homes and trailer homes. Mr. Wood, could you address whether there are other Kentucky statutes that address break-ins to vehicles or boats or airplanes? My understanding is that the revision that came with this statute, this unusually worded building definition statute, was to encompass most of those. There are theft statutes. Under first and third degree burglary, there is, of course, within the same statute, trespass, which second degree trespass is building focused. And then there are theft statutes. I don't know the code sections, but that mention vehicles. The definitions are different. They don't talk about aircraft, public transportation, religious use, educational purposes, and so on and so forth. But there are statutes that reach vehicle intrusion. Thank you. And with that, unless there are other questions, I'll yield my time. Thank you, Your Honor. Thank you. Anything further? Three points on rebuttal, Your Honors. On the issue preclusion point, it has not been consistently applied by the courts in this case. It has been interrupted and abandoned by the subsequent courts after the initial finding by the magistrate judge in the Sixth Circuit. And as far as the government's argument that law of the case or issue preclusion should be back on the table in its brief in opposition in this court, the government says it was confused because it originally thought Mr. Shepard was entitled to relief on the merits, but now it does not. But the merits cannot control the procedural analysis like that. Waiver is a potentially case dispositive issue, and it doesn't make sense that that would already be on the table when the court has not even reached the merits in its analysis. Second of all, the government is perfectly capable of seeking certiorari in this case. If the court does grant the petition and issue the rent, the government can appeal to the Supreme Court, and they could resolve the split if there is one. And as far as the relief in this case, it is Mr. Shepard's position that whichever court does the resentencing, if there is one, that court would be bound by this court's order if it does say that Mr. Shepard is entitled to be sentenced without the enhancement and he's entitled to immediate release or at least conditional release. Secondly, the statutory definition of premises or statutory definition of building, premises is the only location in the statute that uses the as-defined herein qualifier. So already under the government's reading, it only applies to two out of the six offenses, and it's our position that it applies to none of them. But that can't be the Kentucky legislature's intent when it defined building the way it did in the statute. And finally, to respond to, I think, Judge Hamilton's questions as far as holdings on second-degree burglary, there's two intermediate appellate courts that have held, in Mr. Shepard's view, that the statute extends to overbroad locations. In Colson, the court held that the statute extended to a hospital room. In Stewart, the court held that the statute extended to a detached outbuilding. And in Cochran, the Supreme Court held that it extended to an unoccupied trailer. So we think under those holdings of Kentucky law, the Kentucky court's- That was the case where the fellow had died. Yes, exactly, Your Honor, recently deceased. So under the holdings, the dispositive holdings of the Kentucky courts that should control the issue of state law in this case, Mr. Shepard believes he is entitled to habeas relief. Thank you. Thank you very much. Mr. Pavatek, Ms. Shrupp, the court appreciates your willingness to accept the appointment in this case and your assistance to the court as well as your client. The case is taken under advisement.